Decided at PENDLETON, July 18, 1896.

## STATE v. KALYTON.
[45 Pac. 756.]

1. PERJURY — MATERIAL ALLEGATIONS TO BE PROVED — CODE, § 1286.— Where the allegations are controverted, there cannot be a conviction under an indictment for perjury, without proof that the oath alleged to be false was taken in a certain action, and in a certain court, as charged in the indictment.

2. RECORD PROOF — PERJURY — EVIDENCE.— The cause and issue wherein the perjury was committed must be proved by the record, if any was made, and where the perjury is assigned to have been committed in the evidence given in the cause, it is still necessary to produce the record, but evidence of the state of the cause at the time the alleged false testimony was introduced, which will demonstrate its materiality, may be given *aliunde.*

From Umatilla: STEPHEN A. LOWELL, Judge.

Joe Kalyton was convicted of the crime of perjury in giving false testimony in a criminal case, and appeals.        REVERSED.

For appellant there was a brief and an oral argument by *Mr. A. D. Stillman.*

For the state there was a brief by *Mr. J. H. Lawrey,* district attorney, with an oral argument by *Mr. Cicero M. Idleman,* attorney-general, and *Mr. Lawrey.*

Opinion by MR. JUSTICE WOLVERTON.

Several questions are made upon the record, two only of which we feel called upon to discuss, as they are fatal to the judgment of the court below. When the state had rested, the defendant moved the court to direct an acquittal, stating the grounds of his motion, which was overruled. We think the motion should have been granted. The charging part of the indictment is as follows: "The said Joe Kalyton, on the eighteenth day of January, A. D., eighteen hundred and ninety-six, in the County of Umatilla and State of Oregon, on his examination as a witness duly sworn to testify the truth in the trial of a criminal action in the Justice's Court for East Pendleton District, in Umatilla County, Oregon, between the State of Oregon, plaintiff, and A-ya-yash, defendant, which court had authority to administer said oath, he, the said Joe Kalyton, then and there, unlawfully and feloniously, testified falsely that A-ya-yash, whose true name is to the

grand jury unknown, had stolen his saddle from a rack, and had sold it to one George Froom, and that he did not know of the sale, and that he had never authorized the said A-ya-yash to sell the saddle, and that he, the said Joe Kalyton, had never received any money or any proceeds from the sale of his said saddle, the said matter so testified being then and there material, and the said testimony being then and there wilfully false; contrary to the statute," etc. Joseph H. Parks, a witness on part of the state, testified, in substance, "I live in Pendleton; am justice of the peace; was in that position on the eighteenth day of January; I knew the defendant and saw him on that day; he swore to a complaint against A-ya-yash for larceny of a saddle; the complaint alleged that the saddle had been stolen from defendant; there was an examination held on the eighteenth day of January, and the defendant was present and was sworn as a witness; sworn to tell the truth, the whole truth, and nothing but the truth, and held up his hand while taking the oath; this was on the eighteenth day of January in Umatilla County, State of Oregon." Question by the court on redirect: "The cause of the trial at that time was for the larceny of defendant's saddle?" Answer: "Yes, sir." On being recalled, he said: "This case was the State of Oregon against A-ya-yash for larceny by stealing a saddle. This is the complaint I have in my hand. It is the complaint that he swore to. That is his signature." George Vroom, a witness for the state, testified, in substance: "I saw him

(defendant) sworn, hold up his hand, consent to the oath; the defendant was sober when he testified in the justice's court; the Indian swore that he didn't know it was his saddle; the examination was in the justice's court about the eighteenth of January." And J. M. Freeman: "I live in Pendleton, and was living there on the eighteenth of January. Am acquainted with Mr. Parks, justice of the peace; I think I was in the courtroom about that time; I was present there when this deaf and dumb Indian, A-ya-yash, was examined on the charge of stealing a saddle from this defendant; saw defendant and heard his testimony."

1. There was other testimony in the case but the foregoing contains the substance of all the evidence given at the trial touching the questions at issue. Upon this record it was contended in the court below that defendant was entitled to a verdict of acquittal because, *first*, it was not shown that defendant had been duly sworn in the trial of an action "In the Justice's Court for East Pendleton Precinct, in Umatilla County, Oregon"; and, *second*, there was no sufficient proof of the pendency of any criminal or other action in said justice's court, or of the nature or substance of the controversy. It is a well known rule in criminal law that the plea of not guilty puts in issue every material allegation of the indictment, hence it becomes incumbent upon the state, unless admitted by the defendant, to establish each of them by competent proof. The statute, (Hill's Code,

§ 1286,) has made it essential to the indictment that it shall set forth in what action, if in an action, and in what court, the oath alleged to be false was taken, and, *a priori*, they must be proven when controverted. It may be inferred from the testimony, if conceded to be competent, that the oath was taken in the action of the State of Oregon against A-ya-yash for the larceny of a saddle, but it nowhere appears that the action was pending in the Justice's Court for East Pendleton Precinct, or that the oath was taken in said court. Joseph H. Parks testified that he was a justice of the peace, and that the defendant was sworn to tell the truth, the whole truth, and nothing but the truth, and held up his hand, but it is not even shown that he was sworn by Parks, much less that Parks was Justice of the Peace for East Pendleton Precinct, and that the oath was taken in said court, and administered by him as such justice. It is apparent that the indictment was not sustained as it regards this essential allegation.

2. The second reason assigned is also pertinent and vital. It is always necessary to show that the testimony given, which must be alleged to have been wilfully false, was material to an issue or controversy in the action where given; but before the materiality can be established, it is essential to know what the cause is, and the nature of the issue or controversy. "The cause and issue wherein was committed the perjury are proved by the record," says Bishop, "which should be in the form and

with the verification required by the ordinary practice of the court." 1 Bishop on Criminal Procedure, § 933*b*. Such a record is proven in this state by the production of the original or by copy thereof, certified by the clerk or other person having the legal custody, with the seal of the court affixed, if there be a seal: Hill's Code, § 730. And where the perjury is assigned to have been committed in the evidence given in the cause, it is still necessary to produce the record, but such evidence may be given *aliunde*, of the state of the cause and its precise posture at the time the alleged false testimony was introduced, as will serve to demonstrate its materiality: 3 Greenleaf on Evidence, § 197. At all events, it is essential to produce the record, if any was made, of the judicial proceeding or cause wherein the false testimony is alleged to have been given: 3 Archbold on Criminal Practice and Pleading, *602, *603; 2 Roscoe on Criminal Evidence, *843; 3 Russell on Crimes, *95; 2 Wharton on Criminal Law, § 1326; *Heflin* v. *State*, 88 Ga. 151 ( 30 Am. St. Rep. 151, 14 S. E. 112 ). The record was not produced in the case at bar, although the justice seems to have had the complaint in his hand while upon the stand, and testified that the crime charged thereby was larceny of a saddle. Perhaps the issue which was tried there was whether A-ya-yash was guilty of the theft of a saddle, and, if so, the evidence which the defendant gave would have been material, but such was not shown to be the issue by any competent evidence, and the record of the trial does not disclose that the defendant either admitted that

such was the issue, or waived the production of the record from the justice's court. These considerations lead to a reversal of the judgment below, and it is so ordered. The cause will be remanded for such other proceedings as may seem meet, not inconsistent with this opinion.                          REVERSED.

Decided at PENDLETON, July 18, 1896.